UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 05 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-502-GWU

JAMES W. LAWSON, PLAINTIFF

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

> Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Lawson

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning a specific step in the test is in order.

In the Sixth Circuit, the Step Three severity regulation has been held to be a de minimus hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

## DISCUSSION

The plaintiff, James W. Lawson, filed applications for DIB and SSI alleging disability due to lung problems, high blood pressure, and carpal tunnel syndrome in both hands. (Tr. 106). After his applications were denied initially and upon reconsideration, he requested and received a hearing before an Administrative Law Judge (ALJ).

The ALJ determined that Mr. Lawson did not have a "severe" impairment, thus terminating the sequential evaluation at Step Three of the Garner analysis (Tr. 31). The Appeals Council declined to review, and this action followed.

5

At the February 3, 2004 administrative hearing, the plaintiff testified that he had been hit on the back of the head and neck with a large rock while crawling in a coal mine. (Tr. 48). This resulted in severe neck and back pain, and he was unable to lift his left arm to the shoulder level, despite wearing a TENS unit. (Tr. 59). He testified that he even needed assistance to be shaven and to button his clothes. (Tr. 58).

Medical evidence in the transcript includes an MRI of the cervical spine which was obtained on September 16, 2002 by the plaintiff's treating family physician, Dr. Mehdi Poorkay. (Tr. 149). The report showed degenerative changes predominantly at C5-6 and C6-7 with narrowing of the neural foramina at C5-6 on the right due to hypertrophic bone formation, and narrowing of the neural foramina at C6-7, slightly more prominent on the left. (Tr. 149-50, 207-8).[1]

Shortly thereafter, on September 25, 2002, the plaintiff was consultatively examined by Dr. Barry Schumer, who was apparently aware of the MRI, but did not see a copy of it. (Tr. 152). Dr. Schumer's examination, among other items, showed that the plaintiff had tightness in the trapezius muscles bilaterally, discomfort with range of motion testing in both shoulders, and difficulty raising his hands above eye level. (Tr. 153). There were no sensory or reflex deficits, and other tests conducted

---

[1] Nerves from C5 to C7 enervate the peripheral nerves going into the upper extremity as well as the upper trunk. American Medical Association's Guides to the Evaluation of Permanent Impairment (5th Ed.) pp. 485-489.

6

Lawson

by Dr. Schumer, such as a pulmonary function test, were normal. (Id.). Dr. Schumer concluded that there was no indication on physical examination of any source of impairment for the plaintiff's complaint of respiratory disease, hypertension, or musculoskeletal problems, including carpal tunnel syndrome. (Tr. 153-4).

Subsequently, a state agency physician, Dr. Kenneth Phillips, signed a form agreeing with a prior, non-physician state agency reviewing source that the plaintiff's physical condition was less than "severe." (Tr. 172-3). He did not provide any discussion, however. Neither Dr. Phillips or the non-physician reviewer discussed the MRI findings.

The plaintiff's treating physician, Dr. Poorkay, submitted office notes reflecting treatment from July, 2002 (Tr. 170-1) and a functional capacity assessment dated February 9, 2004. The functional capacity assessment indicates that the plaintiff could lift no weight, could not stand or walk, could not sit, and was unable to perform any postural activities. (Tr. 244-5).

The ALJ rejected Dr. Poorkay's opinion because it was not supported by objective findings in his office notes,[2] and because the plaintiff's testimony at the

---

[2] Dr. Poorkay's notes are difficult to read, but it is possible to discern that he reviewed the MRI and referred his patient to a neurosurgeon, Dr. Brooks. (Tr. 158, 162). He also advised an orthopedic consultation. (Tr. 159). Dr. Franklin Belhasen evaluated the plaintiff in October, 2003, on referral from Dr. Poorkay, and found that the plaintiff's neck range of motion was reduced. (Tr. 190-1). After reviewing the MRI, Dr. Belhasen advised referral for an EMG/NCV. (Tr. 191). No functional restrictions were suggested.

7

hearing was at least somewhat inconsistent with the physician's notes, in that the plaintiff stated that he would be able to lift five pounds, sit for 30 minutes, and stand or walk for 30 minutes to an hour. (Tr. 55, 57-8). As a result, the ALJ essentially relied upon the opinions of Dr. Schumer and Dr. Phillips that the plaintiff did not even have a "severe" impairment.

While there is some conflict between the plaintiff's testimony regarding his ability to lift, stand, and walk, and the form prepared by Dr. Poorkay, either would render the plaintiff incapable of performing a full range of full-time sedentary work. Dr. Poorkay was not only a treating source, but the only physician to comment on Mr. Lawson's residual functional capacity who had reviewed the MRI findings. Although Dr. Schumer concluded that the plaintiff did not have any source of impairment on physical examination, he, nevertheless, had found problems with the range of motion in the shoulders which, to a lay reviewer, would be consistent with the MRI findings, and would logically result in at least some restrictions on the plaintiff's functional ability. If the MRI findings had been available, his conclusion that there was no "source" for impairment might have been considerably different.

Therefore, given the objective evidence available to the treating physician as opposed to the consultative source, the Court concludes that it was error to stop the sequential evaluation at Step Three.

8

Lawson

The plaintiff has also submitted additional evidence to the Appeals Council, some of which duplicates records already before the ALJ. However, it also includes information that the plaintiff had a EMG/NCV test on January 23, 2004 showing cervical radiculopathy and ulnar neuropathy across the left elbow. (Tr. 10). This evidence may be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 5 day of August, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE